# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. **21-MJ-0720**
OnePlus A6013 cell phone seized under FPF # )
2020250600104101 ("Target Device") )
)

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the  Southern  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21, USC sec. 952/960/963 | Importation of a Controlled Substance and Conspiracy |

The application is based on these facts:
See Attached Affidavit of Homeland Security Investigations Special Agent Andrew Crotzer, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Andrew Crotzer, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone  *(specify reliable electronic means)*.

Date: 2/24/21

*Judge's signature*

City and state: San Diego, California         Hon. William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Andrew Crotzer, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

> OnePlus A6013 cell phone seized under FPF # 2020250600104101 ("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Pedro Kevin CRISPIN-LEON ("Defendant") for importing approximately 13.58 kilograms of methamphetamine from Mexico into the United States. The Target Device is currently in the custody of Customs and Border Protection and located at 9495 Customhouse Plaza, San Diego, CA 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since June 2018. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. In February 2019, I successfully completed 24 hours of Mobile Forensics, Cellebrite UFED4PC and Physical Analyzer Training.

5. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of

controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

6. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data,

remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

8. On September 4, 2020, at approximately 2:25 a.m., Pedro CRISPIN-Leon ("CRISPIN" or "Defendant"), a United States Citizen, applied for entry into the United States from Mexico at the Otay Mesa Port of Entry, San Diego, California, in vehicle lane #6. CRISPIN- Leon was the driver, sole occupant, and registered owner of a gray 2017 Honda Civic with California license plates 7WWG851. Customs and Border Protection Officer (CBPO) Edgar Cintron was working in primary inspection and received two negative customs declarations from Defendant. CRISPIN told CBPO Cintron that he was traveling to San Diego, California.

9. CRISPIN was asked to open his trunk for inspection. During the inspection,

CBPO Cintron lifted the carpet near the spare tire and found a large gym bag in the tire well of the vehicle. CBPO Cintron unzipped the bag and found several packages contained inside. During secondary inspection in the vehicle lot, CBPOs extracted 6 packages from the gym bag with a total weight of approximately 13.58 kilograms. The substance inside the packages preliminarily tested positive for methamphetamine. Officers placed CRISPIN under arrest for violating Title 21 United States Code, Sections 952 and 960, Unlawful Importation of Controlled Substances.

10. CRISPIN waived his Miranda rights and denied knowledge of narcotics inside the vehicle, and stated the drugs were possibly planted in his vehicle. He claimed he and his wife live in Tijuana and own only one vehicle. Defendant explained that he is employed at UPS in Chula Vista, and typically works Tuesday through Saturday from 3:00 a.m. until approximately 11:00 a.m. CRISPIN claimed that after getting home from work, he usually takes a three to four hour nap. Defendant further explained that he wakes up to have dinner with his family, then takes another nap before leaving for work.

11. CRISPIN stated on Thursday, September 3, 2020, he got home around 12:00 p.m. and then went to sleep around 2:00 p.m. CRISPIN claimed that his wife went to her mother's house while he was asleep. (CRISPIN believed that nobody else had access to his vehicle besides his wife. He explained that she parks it just outside her mother's house when she visits.) CRISPIN stated his wife brought the vehicle home, but got a ride back with her mother to spend the night at her mother's house.

12. CRISPIN stated he woke up around 1:00 a.m. on September 4, 2020, to head to work. He was unable to explain how the drugs would be removed from his vehicle once he crossed into the United States. CRISPIN reiterated that his vehicle sits in a parking lot while he is working, and at his house when he is off work.

13. During his post-arrest interview, CRISPIN acknowledged that the Target Device belongs to him and claimed that it contains his communications with his wife via Facebook Messenger that may confirm his version of events. CRISPIN provided agents with a signed consent form to search the Target Device.

14. Following the interview, the Target Device was downloaded at the Otay Mesa port of entry pursuant to CRISPIN's consent. Although the download contained data such as call logs and text messages, it did not include Facebook Messenger communications CRISPIN referred to during his post-arrest statement.

15. I am aware, based on my training and consultation with an HSI certified forensic analyst, that different forensic applications used for mobile device analysis may produce different results in data extraction. In this case, the version of a software tool used at Otay Mesa POE allowed agents to obtain an Advanced Logical extraction of the Target Device. Using a more advanced version of the software available at the HSI forensic lab may produce a more complete download, including extraction of third-party applications such as Facebook Messenger. I am therefore asking for the ability to forensically examine the Target Device again.

16. Based on my review of the crossing history, I know that CRISPIN had regular crossing in the vehicle where narcotics were found for several months prior to his arrest. I believe there is probable cause that CRISPIN and others were engaged in a conspiracy to import illegal drugs prior to his arrest on September 4, 2020. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States. Accordingly, based upon my experience and training, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of CRISPIN, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the Target Device. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. There is probable cause to believe that additional evidence of CRISPIN's contacts with his wife and/or other co-conspirators will be found in the Target Device dating back to July 4, 2020. Accordingly, I request permission to search the Target Device for data beginning on July 4, 2020, up to and

including September 4, 2020.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. As stated above, agents previously obtained a download of the Target Device pursuant to CRISPIN's consent. Advanced logical extraction was obtained on or about September 4, 2020. No data obtained from the original extraction is used to support this application, other than as described in this affidavit.

## CONCLUSION

21. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.



Special Agent Andrew Crotzer
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 24th day of February, 2021.

*William V. Gallo*
Honorable William V. Gallo
United States Magistrate Judge

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

OnePlus A6013 cell phone seized under FPF # 2020250600104101 ("Target Device")

currently in the possession of Customs and Border Protection and located at 9495 Customhouse Plaza, San Diego, CA 92154.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 4, 2020, up to and including September 4, 2020:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.